**STANLEY–BLEDSOE CORPORATION**

**v.**

**Mederic J. LeBLANC and Alvin E. LeBlanc, d/b/a LeBlanc Brothers, Contractors, J. B. McDaniels, and Aetna Insurance Company.**

**Civ. A. No. 2735.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Dec. 2, 1964.

Charles W. Franklin, Joseph F. Keogh, Franklin & Keogh, Baton Rouge, La., for plaintiff.

Richard C. Baldwin, Adams & Reese, New Orleans, La., for respondent Aetna Ins. Co.

Aubert D. Talbot, Leon LeSueur, Talbot, LeSueur & Talbot, Napoleonville, La., for respondents LeBlanc Bros., contractors, and J. B. McDaniels.

WEST, District Judge.

Plaintiff, Stanley-Bledsoe Corporation, entered into a contract with United Gas Corporation whereby plaintiff was to construct some 30 odd miles of 30 inch pipe line extending from the south header of Red River in Avoyelles Parish, Louisiana, to the south side of the main line valve number 15 in Lasalle Parish, Louisiana. Item No. 1 of this contract required plaintiff to "Clear, Grub and Grade Right of Way" through which the pipe line was to be laid. Insofar as is pertinent to this case, the contract between plaintiff and United Gas provided as follows:

"Item No. 1—*Clear, Grub and Grade*

*Right of Way*

"*Clear*

\* \* \* \* \* \*

"All permanent right of way shall be cleared to the widths set forth in the easements and shown on the Drawings. Temporary working areas provided may be cleared if clearing is necessary for Contractor's operations.

"Contractor shall provide a pipe line detector of an approved design and shall locate, uncover and mark all existing lines crossed prior to the beginning of any operation.

"Contractor, having first ascertained from Owner that permission has been secured from the property owner, shall build suitable gates or gaps in the fences crossed by the route of the pipe line and maintain them so that livestock shall be prevented from entering or leaving the property. Before cutting such fences to make these gates or gaps, Contracttor [sic] shall brace the fences to prevent damage to them. Gates or gaps shall be so constructed that they can be securely closed. Fence braces, gaps or gates built by Contractor and found unsatisfactory to the land owners shall be corrected to meet their requirements. Where necessary, Contractor shall furnish a watchman to maintain these gates to prevent livestock from entering or leaving the property and also shall furnish watchmen in any instance where required so to do by Owner.

"If timber is encountered, the right of way shall be cleared by the removal of overhanging branches which would be in the way of construction or future operations and by the cutting of all trees, brush, stumps and other encumbrances flush with the finished grade of the right of way, except for stumps in the ditch line which shall be removed by grubbing.

"Contractor shall clear the right of way a sufficient distance from the ditch line by removing all loose brush, stumps and other debris so that the spoil bank from the ditching operations will not fall on any foreign materials that might become mixed with the excavated soil. All trees cleared will be felled on the right of way. Clearing operations done with bulldozers will be con-

fined to the right of way; and trees, stumps, brush and other debris will not be pushed off the right of way. Any merchantable timber shall be stripped of leaves and branches and cut into standard lengths and stacked on and parallel to the right of way for disposal by Owner unless otherwise specified in the right of way easement.

"All timber that is not merchantable and all tree tops, brush and inflammable debris shall be burned on the right of way or disposed of in accordance with the provisions of the right of way easement. Contractor shall take every precaution to prevent .the burning of this material from causing damage off the right of way, and Contractor shall be liable for any damage caused by this operation.

*"Grub and Grade*

"Contractor shall complete all grubbing and grading necessary over the entire line to allow passage of equipment or to allow the ditch to be excavated to the line and grade established by the Engineer.

"Spoil banks from the grading operations shall not be placed where drainage will be affected. Contractor shall not place spoil off of Owner's right of way. If additional spoil area is required by Contractor, such spoil area shall be secured at Contractor's sole cost and expense.

\* \* \* \* \* \*

"Exhibit C—Specifications

"Item No. 7—*Backfill and Cleanup*

\* \* \* \* \* \*

"Where necessary and where required by the Engineer, Contractor shall install culverts along the right of way, the materials to be furnished by Owner. Contractor shall protect the backfill from washing away by the installation of shoring or riprap or sacks of earth or by the building of terraces, or by excavation of cross drain ditches to carry any water from rainfall away from the ditch line.

"Contractor is specifically notified that provisional acceptance and partial payments for work done shall not relieve Contractor from all work necessary to put the backfill, the right of way, and other roads or lands used by it in proper shape at the time of final acceptance of the job. Before final acceptance of the job, the entire line will be inspected, and whatever work is necessary shall be done to leave the right of way in the best possible condition."

In this prime contract, portions of which are above quoted, the CONTRACTOR referred to is the plaintiff herein.

Plaintiff then entered into a subcontract with the respondents, Mederic J. LeBlanc and Alvin E. LeBlanc, d/b/a LeBlanc Brothers Contractors, and J. B. McDaniels, as joint venturers, whereby plaintiff subcontracted the work of clearing, grubbing and grading to the defendants. This subcontract, in its preamble, stated as follows:

"WITNESSETH:

"WHEREAS, CONTRACTOR has heretofore entered into a contract dated August 3rd, 1961, (hereinafter called "PRINCIPAL CONTRACT"), with United Gas Pipe Line Company, a Corporation, having its principal offices in Shreveport, Louisiana, (hereinafter called "OWNER").

"The work to be done by CONTRACTOR under the terms of the PRINCIPAL CONTRACT includes but may not be limited to, the construction of a high pressure 30″ gas pipe line along with its appurtenances, from a point commencing at the South side of the Red River, Avoyelles Parish, Louisiana, and extending to the South side of the site of the proposed main line valve number 15, located in LaSalle Parish, Louisiana, and identified as Section 3 of the proposed pipe line. Said work includes the cutting of fences and the installation of gates,

the clearing and removal of timber from the rights-of-way and the grading of the rights-of-way for pipe line construction."

This subcontract then proceeds to subcontract the following work to respondents:

*"SCOPE OF WORK*

"SUBCONTRACTOR shall furnish all the labor, materials, tools, construction equipment, fuel, transportation and all other things necessary and perform in a prompt, efficient and workmanlike manner the following work:

"Where fences cross the pipe line right-of-way, the adjacent posts will be braced and a gap the width of the pipe line right-of-way cut in the fence, and temporary gates shall be furnished and installed all in a manner acceptable to the OWNER'S ENGINEER and CONTRACTOR. No fences are to be cut without the approval of the OWNER'S ENGINEER.

"The pipe line right-of-way land shall be cleared of trees, brush, stumps, undergrowth, hedges, and other vegetation. Merchantable timber including pulp wood where required shall be cut to length and stacked neatly in piles along and parallel to the edge of the right-of-way the fartherest away from the ditch line. Such clearing shall be 60 ft. wide and the entire length of the pipe line right-of-way except, for the excluded sections between station 5995+40 to station 6203+09, station 6643+50 to station 6665+85 and station 4857+42 to station 5004+00.

"All tree stumps and roots shall be removed from the trench area for a distance of 6 ft. on each side of the pipe line trench center line.

"All limbs, tops, stumps and debris shall be disposed of by burning on the right-of-way, buried at approved locations on the right-of-way or removed from the right-of-way to disposal areas as secured by the SUBCONTRACTOR, provided such disposal areas are removed sufficiently that the debris so removed will not be in view from the pipe line right-of-way.

"The pipe line right-of-way land shall be graded in such a manner that it can be traversed by construction equipment from end to end. The plane across the right-of-way shall be essentially level and the plane the length of the right-of-way shall be graded to slopes that will permit normal pipe line construction, without excessive bends or extra depth ditch. Conformance to generally accepted practice as interpreted by the CONTRACTOR'S inspector will determine the extent of grading required.

"SUBCONTRACTOR shall at all times, maintain the pipe line survey stakes furnished by OWNER. Should such stakes be removed or destroyed during SUBCONTRACTOR'S operations, such stakes so removed or destroyed, shall be replaced by and at the cost of the SUBCONTRACTOR.

"SUBCONTRACTOR shall be fully responsible for any damage done by or the result of actions or operations of the SUBCONTRACTOR or the SUBCONTRACTOR'S employees or agents, to property outside of the right-of-way limits provided by the OWNER, including the escape of or damage to livestock through fences or gates either on or off of the right-of-way.

"All soft or mucky areas which require rip-rap for the crossing of SUBCONTRACTOR'S equipment, shall be rip-rapped in a neat and workmanlike manner and of sufficient amount so that the CONTRACTOR can use the crossing for his equipment. The rip-rap material is to be of suitable length and placed to conform with the CONTRACTOR'S inspectors instructions.

"Areas which indicate that rip-rap may be required at the time CONTRACTOR performs his operations, will have the rip-rap material cut to length and stacked along the edge of the right-of-way for future placement.

\* \* \* \* \* \*

"CONTRACTOR may inspect workmanship as work progresses and shall have the right to reject any work found not meeting the terms of this contract or the specifications and require SUBCONTRACTOR to replace such work.

\* \* \* \* \* \*

*"COMPLETION OF WORK*

"11. SUBCONTRACTOR shall complete all his work and construction hereunder on or before *October 1, 1961.* Time is of the essence of this subcontract.

\* \* \* \* \* \*

*"CONTRACT CLARIFICATIONS*

"1. All trees, brush, undergrowth, hedges and other vegetation removed, except that portion that is removed within the pipeline trench area, shall be cut on a horizontal plane as near the ground line as possible, and in no instance shall the tree stumps be any higher than 2″ above the ground surface. Pulling of trees and other vegetation outside of the pipeline trench area, to the extent that such operation will leave holes and soft spots in the ground that will interfere with the pipe laying operations, will not be done.

"2. Where there are stacked logs, gaps shall be left in the stacks of logs to permit the movement of livestock across the right-of-way. Such gaps shall be no less than fifty (50) feet in length and no further apart on each property than three hundred (300) feet.

"3. When the debris is burned on the right-of-way, it shall be done only in a manner and at a time that will not be injurious or hazardous to the adjoining property and shall be done with care and caution, in a safe and orderly manner. At no time will fires be permitted unattended.

"4. SUBCONTRACTOR shall keep the cleared right-of-way cleaned up behind the clearing operation. In no event shall the final cleaning up operation in any section of the right-of-way become more than three (3) miles behind the tree felling operation.

"5. SUBCONTRACTOR shall enter upon no lands or property to do work without first having obtained permission from the OWNER'S Engineer to do so.

"6. Gates shall be kept closed at all times, except when in use, to prevent the escape of livestock.

"7. Where necessary the SUBCONTRACTOR shall make the arrangements at his cost for access roads.

"8. CONTRACTOR will make the permanent replacement of fence gaps.

"9. CONTRACTOR will remove rip-rap where required.

"10. CONTRACTOR will furnish pipe detector and one man to operate it. SUBCONTRACTOR will furnish additional help as required and will furnish labor to dig out the line crossing."

Respondents admittedly performed the work required under this subcontract, and left the job some time in the latter part of October, 1961. Thereafter, petitioner proceeded to lay the pipe as required by its prime contract with United Gas. The job was finished by petitioner some time prior to April 30, 1962, but United Gas refused to accept the finished

work for the reason that there were, at that time, apparently many tree stumps in the right-of-way area that protruded too far above the ground. United Gas insisted that these stumps be recut and the area re-graded before it would accept the work done by plaintiff. Plaintiff then attempted to get United Gas to pay the cost of re-cutting these stumps, but was unsuccessful. After United Gas refused to pay the cost, plaintiff sent a telegram, dated April 30, 1962, to respondents, advising them that plaintiff would look to them, respondents, for the cost of re-cutting the stumps, taking the position that respondents had not done their work in accordance with the terms of the subcontract. This was the first notice that respondents had that any claim was being made against them for allegedly not having completed their work in a satisfactory manner. Plaintiff then proceeded to re-cut the stumps, and on May 15, 1962, sent respondents a bill for the cost of this work.

It was agreed and stipulated between counsel at the trial of this case that the amount of money now in dispute is the sum of $17,189.41, representing the cost to plaintiff of doing this work. It was also agreed and stipulated between counsel that the only dispute here involved is whether or not respondents, under their subcontract, were obligated to come back on the job, after petitioner had completed its work under the prime contract, and re-cut all stumps that were then protruding more than two inches above the ground, even though, as further agreed and stipulated between counsel, at the time respondents left the job in October, 1961, all stumps were, in fact, cut to a height of two inches or less above the ground.

This Court concludes that respondents were under no such obligation under the terms of its subcontract with petitioner. In essence, respondents were to clear, grub and grade the right-of-way so that petitioner could lay the pipe line as required by its contract with United Gas.

To clear the right-of-way, respondents were to cut fence gaps, saw and fell merchantable timber, and burn debris. To grub the area, respondents were to use bulldozers or tractors and clear small trees and stumps from the right-of-way, leaving no stumps over two inches above the ground, and to grade the right-of-way, respondents were obligated to grade or level it to contour so the area could be traversed by petitioner's equipment for laying the pipe.

It is conceded by petitioner that respondents did this work, as required, and that the entire area was left by respondents in a satisfactory condition when they left the job in October, 1961. Petitioner had no complaint at that time, and up to that time, respondents had performed satisfactorily under the subcontract. After respondents left the job, the evidence shows that the ground became wet with rains, and the area was heavily traversed by petitioner's pipelaying, backfilling, and grading equipment. As a result of this activity, the soil along the right-of-way subsided and in many instances, when the job was completed, due to this settling or compacting of the soil, the stumps left in the ground then protruded more than they had at the time respondents finished their work. There seems to be no question from the evidence that it was the wet weather, and the activities of petitioner with its heavy equipment, subsequent to the time respondents left the job rather than any activity of respondents, that caused the condition complained of by United Gas. Respondents performed all of the work undertaken by them in a completely satisfactory manner. They cannot be held liable for conditions developing later, after they left the job, and over which they had no control whatsoever. It seems quite clear from a reading of the pertinent provisions of the prime contract and the subcontract agreement that respondents' work was limited to clearing, grubbing and grading the area to the specifications therein set forth so

that petitioner could proceed with the laying of the pipe line. It will be noted that in the preamble to the subcontract agreement, reference is made to the fact that the work of contractor, under its principal contract, called for the "cutting of fences and the installation of gates, the clearing and removal of timber from the right-of-way and the grading of the rights-of-way for pipe line construction." The subcontract agreement then proceeds to subcontract certain work to respondents. Obviously, the work subcontracted to respondents was in furtherance of the obligation of contractor to clear and remove the timber from the right-of-way and to grade the right-of-way "for pipe line construction." Plaintiff readily admits that respondents did do this work in such a manner as to allow plaintiff to construct the pipe line in question. Plaintiff had no complaint concerning the manner in which this work was performed by respondents. The subcontract agreement called for respondents' finishing their work in October of 1961, and, as a matter of fact, respondents did finish their work in October of 1961. This was, of course, prior to the time the pipe was laid in the ground by petitioner.

There was ample evidence to indicate that the condition which developed after respondents left this job could easily have been anticipated, and that if respondent was to be obligated to return to the job at a later date to re-grub or re-grade the area, such a provision could very easily have been included in the provisions of the subcontract agreement. Such was not done. The subcontract agreement provides that the respondent "shall complete all his work and construction hereunder on or before October 1, 1961." Respondent did complete all of the work provided for under this subcon-

tract agreement at or about the date specified in the subcontract agreement, to the complete satisfaction of the plaintiff. Therefore, if the condition of the right-of-way area was so altered by plaintiff's activities after respondent had satisfactorily completed his job as to prevent an acceptance of the entire job by United Gas, the cost of re-grubbing or re-grading the area in order to satisfy the requirements of United Gas must be borne by the plaintiff. Plaintiff incurred this obligation specifically under Item No. 7 of the principal contract wherein it is provided that "before final acceptance of the job, the entire line will be inspected, and whatever work is necessary shall be done to leave the right-of-way in the best possible condition." This obligation was not undertaken by respondents in the subcontract agreement.

Plaintiff is therefore not entitled to recover the $17,189.41 here in dispute. Certain other claims and cross-claims were made in this matter, but by agreement during trial, it was stipulated that if plaintiff were not entitled to recover the item in dispute, the gross amount due respondents pursuant to their subcontract with petitioner was the sum of $104,634.98, of which amount petitioner had previously paid the sum of $96,043.87; that in addition to this credit, petitioner was also entitled to a further credit of $2,720.25, representing an expenditure for replacing some survey stakes in the right-of-way which should have been replaced by respondents, making a total credit due plaintiff of $98,764.12. This leaves a net amount now due respondents under their subcontract with petitioner of $5,870.78, which amount respondents are entitled to recover. Judgment will be rendered in favor of respondents and against the plaintiff accordingly.